# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| KENDRET WALLS,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | CIVIL ACTION NO. 15-00275-N |
| | ) | |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kendret Walls has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20).

Upon consideration of the parties' briefs (Docs. 12, 13, 16), those portions of the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and the oral argument of the parties made May 25, 2016, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

# I.    Background

On February 6, 2012, Walls filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"),[1] alleging disability beginning January 31, 2009, later amended to December 30, 2011.[2] After his applications were initially denied, Walls requested a hearing before an Administrative Law Judge ("ALJ") for the SSA, which was held on June 25, 2013. On September 13, 2013, the ALJ issued an unfavorable decision on Walls's applications, finding him "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 19 – 33).

Walls requested review of the ALJ's decision by the SSA's Appeals Council. The Commissioner's decision on Walls's applications became final when the Appeals Council denied the request for review on April 7, 2015.  (R. 1 – 6).  On June 3, 2015, Walls filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.  (Doc. 1).    *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title

---

[1] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

[2] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    <u>Standards of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the

[Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….'

42 U.S.C.A. s 405(g) (West Supp. 1982) (emphasis added). As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (footnote and some citations and quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is

unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[3]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[4]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[4] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v.*

*Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

## III.   <u>Analysis</u>

At Step One, the ALJ determined that Walls had not engaged in substantial gainful activity since the alleged onset date. (R. 24). At Step Two, the ALJ determined that Walls had the following severe combination of impairments: herniated lumbar disc; hypertension; L5-S1 moderate right paracentral disc extrusion causing right S1 nerve root impingement and mild neuroforminal stenosis; and obesity. (R. 24). At Step Three, the ALJ found that Walls did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 178).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant

work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Walls had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,]" with the following limitations:

He is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours in an 8-hour workday … The claimant would require an on demand sit/stand option to relieve pain and discomfort and can ambulate short distances of up to 15 minutes in duration per instance. He could frequently operate foot controls and frequently reach overhead. He could never climb ramps, stairs, ladders or scaffolds. He could frequently balance but only occasionally stoop, crouch and kneel and could never crawl. He could never be exposed to dangerous machinery, dangerous tools, hazardous processes or unprotected heights. He can occasionally operate a commercial motor vehicle. The claimant can be exposed frequently to atmospheric conditions, weather, humidity, wetness, and extreme heat. He can be exposed occasionally to vibrations and extreme cold. He would be unable to perform assembly-line work with

production-rate pace, but could perform goal-oriented work. Any time off task would be accommodated by normal workday breaks.

(R. 25 – 26).

Based on this RFC, the ALJ determined that Walls was unable to perform any past relevant work. (R. 31). At Step Five, the ALJ, after taking testimony from a vocational expert, found that there exist significant numbers of jobs in the national economy that Walls can perform given his RFC, age, education, and work experience. (R. 32 – 33). Thus, the ALJ found that Walls was not disabled under the Social Security Act. (R. 33).

## A.    Treating Physician's Opinion

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in

determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *E.g., Bloodsworth*, 703 F.2d at 1240. However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[

the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).

Walls asserts that the ALJ erred in assigning less than substantial weight to

the opinion of treating physician Dr. Maruice Fitz-Gerald provided in a Medical

Source Statement ("MSS") completed June 4, 2012 (R. 327 – 331 [SSA Ex. 7F]),

which "opin[ed] that [Walls] was incapable of performing even sedentary work." (R.

29). Fulfilling his duty to state with particularity the weight given to the medical

opinion and the reasons therefore, the ALJ "afforded little weight" to "Dr. Fitz-

Gerald's conclusions in his MSS[,]" explaining as follows:

> Quite contradictorily, [Dr. Fitz-Gerald] indicated that the claimant
> could sit for two hours at a time uninterrupted, but then noted that the
> claimant could sit no more than one hour in an 8-hour workday. **Dr.
> Fitz-Gerald also determined that the claimant could not stand
> or walk even one hour during an 8-hour workday.** He went on to
> include several postural limitations and noted that the claimant would
> be absent from work more than three times per month. Additionally,
> he noted that the claimant's pain was profound, intractable and
> virtually incapacitating with significant side effects limiting
> effectiveness of work duties.
>
> Dr. Fitz-Gerald wrote that these limitations had affected the claimant
> for three years and were supported by objective findings; however, the
> undersigned does not concur. Indeed, nothing in the objective record
> demonstrates the existence of the extensive limitations listed in the
> MSS for even one year, nor does it support the severity of the
> symptoms as indicated by Dr. Fitz-Gerald. In fact, his unexplained
> rendition of the claimant's condition as characterized in the MSS is
> simply not supported by the balance of the longitudinal medical record
> and, in particular, Dr. Fitz-Gerald's own clinical observations.
>
> Indeed, in reviewing copious treatment notes documenting the
> claimant's varying biweekly and triweekly treatment from Brent
> Tidwell, D.C. between April 2012 and August 2102, the claimant never
> rated his pain level above a 5 on a scale from 0 to 10 (Exhibit 9F). **In
> fact, by July 12, 2012 and continuing through twelve more
> appointments through August 24, 2012, the claimant
> consistently rated his pain as a 0 on a scale from 0 to 10, with
> the only exception occurring on August 14, 2012, when he rated
> it as a 2** (Id. at pgs. 81-99) (emphasis added).
>
> The undersigned notes that the claimant denied muscle weakness on

the initial application for chiropractic treatment and reported that BC powder, an over-the-counter medication, "calm[ed] down" his symptoms. Additionally, although he alleged that his symptoms resulted in him having "no life," the claimant reported that he was getting married later that week (Id. at pgs. 5-6) (emphasis added).

Subsequent monthly appointments with Dr. Fitz-Gerald from July 2012 – November 2012, as well as January 2013 and April – May 2013 included similar complaints and objective findings regarding the claimant's back and left leg. His treatment plan included injections of Decadron and adjustment of pain medications (Exhibits 8F, 10F, 11F, 12F, and 14F).

(R. 29 – 30 (emphasis in original)).

Considering the above, it is reasonably clear that the ALJ assigned "little weight" to Dr. Fitz-Gerald's opinion because it was internally inconsistent (i.e. "inconsistent with the doctor's own medical records") and "was not bolstered by the evidence," both of which are sufficient "good cause" to disregard at treating physician's opinion. *Winschel*, 631 F.3d at 1179. While Walls protests that "[t]here is significant objective medical evidence to substantiate Dr. Fitz-Gerald's opinion" (Doc. 13 at 6), an ALJ's decision need only be supported by substantial evidence, even if the evidence preponderates against it. *Ingram*, 496 F.3d at 1260. Moreover, in pressing this argument, Walls simply points to other evidence indicating that Walls has been treated for back and hip pain and suffers from a herniated disc causing impingement on his nerves. (Doc. 13 at 6). In rejecting Dr. Fitz-Gerald's opinion, however, the ALJ did not find that Walls suffers from no pain at all, only that the record evidence did not support the severity of the limitations Dr. Fitz-Gerald assigned to Walls based on that pain. The ALJ's decision contains a thorough discussion of the objective medical evidence of record that supports his

determination that the evidence did not bolster Dr. Fitz-Gerald's opinion, and Walls has cited no record evidence that undermines this determination.[5]

Accordingly, the Court **OVERRULES** Walls's claim that the ALJ committed reversible error in assigning less that substantial or considerable weight to Dr. Fitz-Gerald's opinion.

## B.    Dr. Harris

Walls claims the ALJ also erred in assigning "significant weight" to the opinion of consultative examining physician Dr. R. Rex Harris.  In his examination notes, Dr. Harris remarked that Walls "states that he has been told that he has a disc rupture but that he decided against surgery" and "that he has had x-rays which show degenerative change of the lumbar spine."  Dr. Harris, however, stated that he had no records supporting these representations.  He then went on to state that

---

[5]    Walls also argues that the ALJ failed to explain how he considered the factors for weighing medical opinions enumerated in 20 C.F.R. §§ 404.1527(c) and 416.927(c) (effective Aug. 24, 2012) (previously at 20 C.F.R. §§ 404.1527(d) and 416.927(d)) in assigning weight to Dr. Fitz-Gerald's opinion.  First, Walls has cited no authority indicating that an ALJ must explicitly discuss the §404.1527(c)/§416.927(c) factors, and the Eleventh Circuit, albeit in an unpublished opinion, has held that "the ALJ is not required to explicitly address each of those factors.  Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions."  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The ALJ has done so here and thus properly assigned "little weight" to Dr. Fitz-Gerald's opinion.

Moreover, the ALJ stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927" (R. 26), and his explanation of "good cause" accounts for four of the §404.1527(c)/§416.927(c) factors.  While recognizing that Dr. Fitz-Gerald had examined Walls and indeed had a treating relationship with him, *see* 20 C.F.R. §§ 404.1527(c)(1)-(2) 416.927(c)(1)-(2), the ALJ also determined that Dr. Fitz-Gerald's opinion was not supported by "medical signs and laboratory findings" and was not consistent "with the record as a whole."  *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).  As for degree of "specialization" and "other factors," *id.* §§ 404.1527(c)(5)-(6), 416.927(c)(5)-(6), there is no indication that either of these factors was particularly relevant to consideration of Dr. Fitz-Gerald's opinion.  To the extent Walls is asking the Court to reweigh those factors, the Court is forbidden from doing so.  *See Winschel*, 631 F.3d at 1178.

"[r]ecords do show that he has been to a chiropractic clinic and has apparently had decompression therapy and manipulations." (R. 480).

Based on these statements, Walls concludes that Dr. Harris was only provided "chiropractic records" and that he was not provided all "necessary background information" before rendering his opinion. (Doc. 13 at 4 – 5). Walls asserts that the medical records allegedly withheld from Dr. Harris – "[t]he MRI reports, the records from Dr. Boston, and the records from Dr. Givhan" – would have confirmed "the severity of his lumbar spine." (*Id.* at 5). Unfortunately, the Commissioner's brief omits discussion of this argument. However, the undersigned is not convinced that this argument amounts to anything more than Walls's disagreement with Dr. Harris's view of the medical records.[6]

Noting that Dr. Harris opined that Walls "is capable of light to sedentary work in the work place" (R. 480), Walls also argues that the ALJ gave no explanation why he "accepted a light RFC over a sedentary RFC." (Doc. 13 at 5). Charitably assuming that Dr. Harris's opinion was ambiguous, the ALJ reasonably interpreted it to mean that Walls could perform <u>both</u> light and sedentary work;

---

[6] This argument is further undermined by the fact that Walls does not support it with specific citations to portions of the record, instead relying on the general, and argumentative, assertion that "objective medical evidence" would confirm "the severity of his lumber spine." Moreover, Walls only argues that the Commissioner's alleged failure to provide Dr. Harris with certain medical records violates a portion of the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") providing that the SSA will "give the examiner any necessary background information about the individual's condition…" HALLEX II-4-1-2, 1996 WL 1586732, at *3. As was recently discussed in more detail in *Quarles v. Colvin*, Civil Action No. 15-00572-N, 2016 WL 4250399, at *7 – 8 (S.D. Ala. Aug. 10, 2016), the undersigned has concluded that the HALLEX is an SSA internal manual that does not carry the authority of law and cannot provide a basis for error on judicial review under § 405(g).

thus, the ALJ properly assigned Walls a light RFC. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Moreover, as the Commissioner points out, at the hearing the ALJ asked the VE a hypothetical limiting Walls to "at a less full range of sedentary-level work," with the VE responding that Walls would still be able to find other jobs. (R. 74 – 75). Thus, any error by the ALJ in not assigning a sedentary RFC at Step Four appears to be harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (an error is harmless if it does not affect the ALJ's ultimate decision).

Accordingly, the Court **OVERRULES** Walls's claims of reversible error regarding Dr. Harris's opinion.

### C.    Pain Standard

In *Holt v. Sullivan,* 921 F.2d 1221 (11th Cir. 1991), [the Eleventh Circuit] articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. 921 F.2d at 1223. The pain standard requires

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

921 F.2d at 1223 (internal citation omitted). If a claimant testifies as to his subjective complaints of disabling pain and other symptoms ... , the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Foote*[ *v. Chater*], 67 F.3d [1553,] 1561–62[ (11th Cir. 1995)

(per curiam)]. "Although this circuit does not require an explicit
finding as to credibility, ... the implication must be obvious to the
reviewing court." 67 F.3d at 1562 (quoting *Tieniber v. Heckler,* 720
F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does
not need to cite " 'particular phrases or formulations' " but it cannot
merely be a broad rejection which is " 'not enough to enable [the
district court or this Court] to conclude that [the ALJ] considered her
medical condition as a whole.' " *Foote,* 67 F.3d at 1561 (quoting
*Jamison v. Bowen,* 814 F.2d 585, 588–90 (11th Cir. 1987)).

*Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (per curiam).

"[C]redibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405

F.3d 1208, 1212 (11th Cir. 2005), and [a court] will not disturb a clearly articulated

credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553,

1562 (11th Cir. 1995)." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782

(11th Cir. 2014).

Along with his discussion of the record medical evidence, the ALJ assessed

Walls's testimony of pain as follows:

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of
> these symptoms are not entirely credible for the reasons explained in this
> decision.
>
> …
>
> The claimant submitted a disability application on March 2, 2012 (Exhibit
> 4E). He alleged that ruptured discs at L5 and S1; nerve damage, with
> radiating pain to his feet; alternating bilateral hip pain; lower extremity
> numbness and achiness; lower back pain and hypertension limited his
> ability to work. Notably, however, **the claimant admitted that he
> stopped working for reasons other than his medical conditions**.
> Indeed, **he reported that "the company where I was working was
> bought out by another company … so they laid me off." Further,
> he indicated that his conditions did not cause him to make**

**changes in his work activity** (Id. at pg. 2) (emphasis added). In a narrative statement of his application, the claimant clarified that he "hurt his back in 2008" but continued to work "**without a break" until he was laid off** (Id. at pg. 10) (emphasis added).

Although the claimant amended the alleged onset to a later date, his admissions regarding his ability and determination to continue working despite his alleged disabling condition vividly demonstrates that his basis for seeking disability was motivated by his unemployment as opposed to his medical conditions.

…

…[T]he claimant appeared and testified at length. He insisted that his back and leg pain disabled him. He described radiating pain down both legs and the onset of sharp pain and numbness after walking five to ten minutes. The claimant testified that he experienced pain daily, which he opined was caused by tension. He reported that laying on his side and taking medication alleviated the symptoms, but only because of sleep. Indeed, he alleged side effects from his medication including drowsiness and memory lapses, neither of which was ever reported to the prescribing physician. Further, he testified that he received no relief from chiropractic treatment or epidural injections and alleged a severe headache after his last treatment. He alleged sleep disturbance and limitation in terms of shaving because of the need to stand up. He described his daily activities as laying down watching television or reading.

Despite these allegations, the claimant admitted that he continued to drive approximately three times per week. He testified that he could carry a gallon of milk or a case of soda and could occasionally reach overhead with both hands. Further, he could walk ten to fifteen minutes, or long enough to go inside a store. **He testified that his last bout of back problems originated after he was on his knees performing yard work in a flowerbed for approximately an hour.** The claimant went on to testify that **he prepared sandwiches, hand washed dishes despite having a dishwasher, shopped for groceries monthly, and attended church weekly** – activities that reveal the relative stability of the claimant's condition. **Further, although the claimant denied visiting anyone when questioned by the undersigned, he admitted that he drove to visit his sister upon questioning by his representative**…

The undersigned carefully considered the claimant's testimony along with the medical, objective and subjective evidence discussed above. To the extent that his testimony was consistent with that evidence, it is reflected in the residual functional capacity. Beyond that extent, the claimant's

testimony simply was not consistent with or supported by the medical or objective evidence of record.

(R. 26, 28, 30 – 31 (emphasis in original)).[7]

In the face of this clearly articulated credibility finding, Walls simply claims, in conclusory fashion, that the ALJ "cherry picked [evidence] from the medical records to support his position Mr. Walls' complaints of pain are not credible" and "ignore[d] all other records in Mr. Walls' claim providing objective medical evidence to substantiate his complaints of pain." (Doc. 13 at 2). Walls's discussion of these "other records" (spanning over 100 pages) is minimal, and "contrary to [Walls]'s contention that the ALJ ignored evidence favorable to [him], 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted). The ALJ's decision in this case was not a broad rejection and [i]s sufficient to enable ... this Court to conclude the ALJ considered [Walls]'s medical condition as a whole. *See id.*" *Mitchell*, 771 F.3d at 782. Walls has failed to make any argument showing how the ALJ's "clearly articulated credibility finding" is not

---

[7] In discrediting Walls's subjective testimony, the ALJ also noted "that the claimant walked in and out of the hearing room with no apparent difficulty and sat down and arose similarly. Further, his gait was unimpaired and he sat throughout the duration of the hearing with ease." (R. 31). An ALJ's use of such observations in making credibility determinations has long been condemned in this Circuit. *See Wilson v. Heckler*, 734 F.2d 513, 517-18 (11th Cir. 1984) (per curiam). However, Walls does not assert error on this basis; moreover, any such error is harmless at most in this case, as the ALJ articulated sufficient other reasons for discrediting Walls's testimony.

supported by at least "substantial evidence," thus giving this Court no reason to "disturb" the ALJ's credibility determination. *Id.*[8]

Accordingly, the Court **OVERRULES** Walls's claims of reversible error regarding the pain standard.

### D.    Obesity

Finally, Walls argues that the ALJ failed to indicate whether or how he considered Mr. Walls' obesity in evaluating his residual functional capacity" in accordance with Social Security Ruling (SSR) 02-1p.

> [O]besity is not a listed impairment, but the ALJ is required to consider obesity in the analysis of a claimant's overall medical condition. *See* SSR 02–1p. Social Security Regulation 02–1p provides that obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant "from doing past relevant work and other work that exists in significant numbers in the national economy." SSR 02–1p.

*Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (per curiam) (unpublished).

---

[8]      This case is unlike *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987), in which the Eleventh Circuit found the ALJ erred in disregarding "objective medical evidence show[ing] several medical impairments that could reasonably be expected to cause to Ms. Hale's pain."   831 F.2d at 1011.   Here, the ALJ found that Walls's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but discredited his "statements concerning the intensity, persistence and limiting effects of these symptoms." (R. 26).

The undersigned also disagrees with Walls's bald assertion that the ALJ's decision "failed to take any of" the factors listed in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and Social Security Ruling 96-7p into "consideration in his decision…"   There is no requirement that an ALJ explicitly list and discuss each of these factors, *see Foote*, 67 F.3d at 1561 (credibility determination does not need to cite particular phrases or formulations), and the ALJ's decision shows he took a number of those factors into consideration.

It is true, as the Commissioner concedes in her brief, that the ALJ did not specifically discuss obesity at Step Four. However, the ALJ found obesity to be a "severe" impairment at Step Two but found at Step Three that it did not result in an impairment or combination of impairments that equaled a listed impairment. The ALJ then determined at Step Four that Walls had the RFC to perform a reduced range of light work, and at Step Five he determined that, while Walls could not perform his past relevant work, there were jobs that exist in significant numbers in the national economy that Walls would be able to perform. The Eleventh Circuit found no error in the ALJ's consideration of obesity in similar circumstances. *See id.*; *Solomon v. Comm'r, Soc. Sec. Admin.*, 532 F. App'x 837, 841 (11th Cir. 2013) (per curiam) (unpublished) ("Contrary to Solomon's argument, his obesity was properly considered in his RFC. To be precise, his obesity was considered by [medical sources] in their assessments, which the Appeals Council evaluated, and it was also considered independently by the Appeals Council, which concluded that his obesity was 'severe' but not symptomatic enough to qualify him for disability."); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (per curiam) (unpublished) ("The record reflects that the ALJ considered Castel's obesity … The ALJ determined that Castel's obesity was a severe impairment.[] However, the ALJ's decision reflects that Castel's obesity was ultimately determined not to result in any specific functional limitations.").[9]

_____

[9] Moreover, in simply arguing that the ALJ failed to show his work under SSR 02-1p, Walls has failed to offer any argument showing how he was prejudiced by the ALJ's alleged failure to follow SSR 02-1p. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Sept. 9, 1981) (Commissioner's noncompliance with SSR will result in reversal if it is shown

Accordingly, the Court **OVERRULES** Walls's claims of reversible error regarding the ALJ's consideration of obesity. There being no other claims of error asserted,[10] the Court finds that the Commissioner's final decision denying Walls benefits is due to be **AFFIRMED**.

## IV. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's April 7, 2015 final decision denying Walls's applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 21st day of September 2016.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

prejudice to claimant resulted); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[10] Generally, claims of error not raised in the district court are deemed waived. *Cf. Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court … Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, No. 15-11567, 2016 WL 3159217, at *4 (11th Cir. June 7, 2016) (per curiam) (unpublished) (same).